## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 03-1130


**NOLAN DELCAMBRE AND PATRICIA DELCAMBRE**

**VERSUS**

**BLOOD SYSTEMS, INC.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20003251
HONORABLE RONALD D. COX, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


**BILLY HOWARD EZELL**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Jimmie C. Peters, and Billy Howard Ezell, Judges.


**REVERSED AND REMANDED.**

**Lawrence N. Curtis**
**Curtis & Lambert**
**P. O. Box 80247**
**Lafayette, LA 70598-0247**
**(337) 235-1825**
**Counsel for: Plaintiffs/Appellants**
**Nolan Delcambre**
**Patricia Delcambre**

**F. Frank Fontenot**
**George Malcom Papale**
**Kym Krystyna Keller**
**Amanda Leigh Cheek**
**Milling, Benson, Woodward, LLC**
**909 Poydras St., Suite 2300**
**New Orleans, LA 70112-1010**
**(504) 569-7000**
**Counsel for: Defendant/Appellee**
**Blood Systems, Inc.**

**EZELL, JUDGE.**

In this case, Nolan Delcambre appeals the decision of the trial court granting Blood Systems, Inc.'s (BSI) exception of prematurity. Mr. Delcambre claims that the trial court erred in finding that he was a patient of BSI under the Louisiana Medical Malpractice Act (MMA) when his injuries occurred. For the following reasons, we reverse the decision of the trial court and remand the case for further proceedings.

BSI is a community blood center which collects donated blood and distributes it to health care providers. On July 29, 1999, Mr. Delcambre went to BSI for the sole purpose of donating blood. During his attempted donation, a phlebotomist employed by BSI incorrectly inserted a needle too deeply into his arm. His arm immediately filled with blood and became markedly swollen. He was treated that day at the emergency room at Lafayette General, where he remained hospitalized for three days. Mr. Delcambre later had to have surgery as a result of the injury, as well as suffering severe pain and possible permanent impairment in his arm as a result of the incident.

On June 15, 2000, Mr. Delcambre filed the present suit. BSI filed an exception of prematurity, claiming that Mr. Delcambre should first have filed his claim to a medical review panel under La.R.S. 40:1299.47. The trial court ruled in favor of BSI, finding that because BSI was a qualified healthcare provider, Mr. Delcambre must first submit his claim to a medical review panel before proceeding in district court. Mr. Delcambre's suit was dismissed as a result of this ruling. From this decision, Mr. Delcambre appeals.

Mr. Delcambre asserts as his lone assignment of error that the trial court erred in finding that his claim was covered under the MMA, as he was not a "patient" of the blood bank within the meaning of the Act. We agree.

The MMA requires that any malpractice claims against a qualified health care

2

provider be submitted to a medical review panel prior to suit being filed. La.R.S. 40:1299.47(B)(1)(a)(i). Under La.R.S. 40:1299.41(A)(1), a "health care provider" is defined as "a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed by this state to provide health care or professional services as a physician, hospital, nursing home, community blood center. . . ." Thus, under La.R.S. 40:1299.41(A)(1), BSI is a qualified healthcare provider and any claims for malpractice would be governed by the MMA.

La.R.S. 40:1299.41(A)(8) (emphasis ours) defines malpractice as:

[A]ny unintentional tort or any breach of contract based on *health care or professional services rendered*, or which should have been rendered, by a health care provider, *to a patient*, including failure to render services timely and the handling *of a patient*, including loading and unloading of *a patient*, and also includes all legal responsibility of a health care provider arising acts or omissions in the training or supervision of health care providers or from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of *a patient*.

La.Civ.Code art. 2322.1(A) (emphasis ours) states, in pertinent part, that:

The screening, procurement, processing, distribution, transfusion, or medical use of human blood and blood components of any kind and the transplantation or medical use of any human organ, human tissue, or approved animal tissue by physicians, dentists, hospitals, hospital blood banks, and nonprofit community blood banks is declared to be, for all purposes whatsoever, the rendition of a *medical service* by each and every physician, dentist, hospital, hospital blood bank, and nonprofit community blood bank participating therein, and shall not be construed to be and is declared not to be a sale.

Accordingly, under La.Civ.Code art. 2322.1(A), the gathering of human blood is a professional medical service, and therefore any unintentional tort or any breach of contract based on that act would be considered malpractice under La.R.S. 40:1299.41(A)(8) if performed upon a patient under the MMA.

The MMA defines a patient as "a natural person who receives or should have received health care from a licensed health care provider, under a contract, express or

implied." La.R.S. 40:1299.41(A)(3). The MMA goes on to define health care as "any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider *for, to, or on behalf of a patient during the patient's medical care, treatment or confinement*." La.R.S. 40:1299.41(A)(9) (emphasis added).

Application of these definitions to the case before us clearly establishes that Mr. Delcambre was not BSI's patient at the time of his injury. He did not receive any health care or medical treatment whatsoever. "A blood donor is not a patient who consults blood bank personnel for treatment or therapy." *Laburre v. East Jefferson Gen. Hosp.,* 555 So.2d 1381, 1384 (La.1990). Rather, he went voluntarily to the blood center to donate his blood for the benefit of others. Furthermore, there was no act performed upon him that was for his own benefit or on his behalf. He did receive a cursory screening prior to the donation, however, this screening "is essential for the benefit of the blood recipient and not the blood donor." *Id.* He entered BSI "for the sole purpose of donating blood, and at no time did [he] receive medical care or treatment as contemplated by the Louisiana Medical Malpractice Act." *George v. Our Lady of Lourdes Reg'l Med. Center, Inc.*, 00-930, p.3 (La.App. 3 Cir. 12/6/00), 774 So.2d 350, 352, *writ denied,* 01-51 (La. 4/23/01), 788 So.2d 427.

BSI cites *Cudges v. Our Lady of Lourdes Hosp.*, 514 So.2d 195 (La.App. 3 Cir. 1987), for the proposition that this court has recognized injuries involving the drawing of blood as being malpractice under the MMA. However, this case is clearly distinguishable from *Cudges.* In that case, the plaintiff was injured while confined in the hospital, where she was receiving care and treatment when the injury occurred. The injury occurred while blood was being drawn for medical testing. This is completely different from the situation in this case. Mr. Delcambre was not under any care from BSI, which is a blood bank, not a hospital. Furthermore, the blood was not

2

being drawn for medical purposes relating to his own well being, but was being drawn solely for donation. This case is clearly distinguishable from *Cudges*.

For the reasons assigned, the decision of the trial court is reversed and remanded for trial on the merits. Costs of this appeal are assessed against BSI.

**REVERSED AND REMANDED.**