LOTTINGER, Chief Judge.
Police Communications Officers (PCO’s) and Emergency Medical Services Communications Officers (EMSCO’s) brought separate actions against the City of Baton Rouge and Parish of East Baton Rouge (City/Parish) seeking parity of compensation with Baton Rouge Fire Communications Officers (FCO’s).[1] These two lawsuits were consolidated. Thereafter on January 12, 1991, the EMSCO’s became employees of the newly formed East Baton Rouge Parish Communications District (Communications District) and amended their petition to add it as a defendant in its suit.[2] After a trial on the merits, the trial *886 court rendered judgment in favor of the PCO’s and against the City/Parish declaring the illegality and deficiency of the Pay Plan for the PCO’s, ordering the City/Parish to bring the pay levels of the PCO’s up to the level of the FCO’s, and awarding the PCO’s past due wages[3], together with legal interest from the date of judicial demand. The trial court rendered judgment in favor of the former EMSCO’s and against the City/Parish and the Communications District declaring the illegality and deficiency of the Pay Plan of the EMSCO’s, ordering the Communications District to bring the pay levels of its communications officers up to the level of the FCO’s, and awarding them past due wages[4], together with legal interest from the date of judicial demand. From these judgments, the City/Parish took this suspensive appeal.[5] Plaintiffs answered the appeal alleging the trial court erred in not awarding legal interest from the date each underpayment of wages became due.
FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES
(Assignment of error IB)
The City/Parish alleges the trial court erred in failing to recognize the EM-SCO’s failure to exhaust their administrative remedies as a bar to their action.
The objection of prematurity for failure to exhaust administrative remedies must be raised in a dilatory exception. La.Code Civ.P. art. 926; Turner v. Maryland Casualty Co., 518 So.2d 1011 (La.1988); Jarrell v. American Medical International, Inc., 552 So.2d 756 (La.App. 1st Cir.1989), writ denied, 556 So.2d 1282 (La.1990). Failure to plead a dilatory exception prior to filing an answer constitutes a waiver. La.Code Civ.P. art. 928.
The City/Parish first raised the objection of failure to exhaust administrative remedies in its answer; therefore, the objection was not timely filed and is waived.
This assignment of error is without merit.[6]
PARITY OF PAY BETWEEN EMSCO’S, PCO’S AND FCO’S
(Assignments of error 1A and 2A)
The City/Parish alleges the trial court erred in requiring parity of pay between the EMSCO’s, the PCO’s and the FCO’s.
The EMSCO’s and the PCO’s cite Section 9.07 of the City of Baton Rouge/Parish of East Baton Rouge Plan of Government and the Louisiana Constitution Article 10 as authority for the proposition that the sala *887 ry levels for the EMSCO’s, the PCO’s and the FCO’s performing similar functions should be equal.

Equal Pay under the City/Parish Plan of Government

Section 9.07 provides as follows:
SECTION 9.07. Pay Plans. The Personnel Administrator shall prepare and recommend to the Mayor-President, within thirty days after the adoption of the Classification Plan by the Personnel Board, separate Pay Plans which shall be transmitted by the Mayor-President with his recommendations to the Metropolitan Council. Each such Pay Plan shall consist of a salary range for each class of position in the Classification Plan, which shall provide for regular increases within each such range, to be earned by length of service and satisfactory service ratings. Each such range shall be determined with due regard to the salary ranges for other classes and to the relative difficulty and responsibility of characteristic duties of positions in the class, the minimum qualifications required, the prevailing rate paid for similar employment outside the service of local government, and any other factors that may properly be considered to have a bearing on the fairness and adequacy of the range. The Council shall have power to adopt the Pay Plans, with or without modification. When so adopted each Pay Plan shall remain in effect until amended by the Council. When a Pay Plan has been adopted by the Council, the Council shall not increase or decrease the salaries of individual members of the Classified Service but shall act in fixing the salaries of members of the Classified Service only by way of amendment of the Pay Plan. (Emphasis added)
In order to determine whether Section 9.07 is applicable to this case, a review of the City/Parish Plan of Government is required. The Plan of Government provides, in pertinent part, as follows:
SECTION 9.01. System for Policemen and Firemen. Appointments, transfers, promotion, demotions, removals, and all other matters relating to the management of personnel in and for the Fire Department and Police Department shall be subject to the general laws of the state applicable to the City of Baton Rouge; provided that wherever in such laws the term Mayor is used it shall be interpreted to mean Mayor-President as far as the application of such laws to the City of Baton Rouge is concerned. (Emphasis in original)
SECTION 9.02 Parish and City Personnel System. There shall be a Parish and City Personnel System, as provided in this Chapter, for all departments, officers and agencies, except the Police and Fire Departments, supported by appropriations made by the Metropolitan Council, and all other Parish offices and boards to which the provisions of this Chapter are constitutionally applicable. For the management and operation of the Parish and City Personnel System there shall be a Personnel Administrator appointed by the Mayor-President for an indefinite term, a Personnel Board of three members appointed by the Council for terms of three years from the first day of January 1949, provided that of those first appointed one shall hold office for one year, one for two years, and one for three years. One member of the board shall always be a member of the Classified Service and shall be appointed from a list of three nominated by the members of such service at a meeting to be held at a time fixed by the Council. The other two members of the board shall be known to be in sympathy with the merit principle as applied to the Civil Service and shall not hold or be a candidate for any other public office or position. (Emphasis added)
SECTION 9.03. Personnel Administrator — Powers and Duties. The Personnel Administrator shall have power and be required to:
[[Image here]]
(f) Prepare and recommend to the Personnel Board a classification plan covering all positions in the Classified Service.
*888 (g) Prepare and submit to the Mayor-President separate pay plans covering the members of the Classified Service whose compensation is provided from appropriations by the Council. (Emphasis added)
[[Image here]]
SECTION 9.05. Classified and Unclassified Services. The service of all departments, offices, and agencies, except the Police and Fire Departments, supported by appropriations made by the Metropolitan Council, shall be divided into the Unclassified and the Classified Services. The Unclassified Service shall comprise: (a) officers elected by the people and persons appointed to fill vacancies in elective offices; (b) persons appointed by the Metropolitan Council; (c) the heads of departments appointed by the Mayor-President, the Chief Executive Officer of each board and commission appointed by the Council, and not more than one assistant or confidential secretary to the Mayor-President and each head of a department; (d) the Parish Clerk of the Parish Court and deputies of the Parish Constable; (e) Assistant Parish attorneys; (f) persons employed in a professional or scientific capacity to make or conduct a temporary or special inquiry, investigation or examination, including special counsel. The Classified Service shall comprise all positions included in the Parish and City Personnel System as defined in Section 9.02 not specifically included by this Section in the Unclassified Service_ (Emphasis added)
SECTION 9.06. Classification Plan. The Personnel Administrator first appointed shall, as soon as practicable after his appointment, prepare and submit to the Personnel Board a Classification Plan for all positions in the Classified Service, according to similarity of authority, duties and responsibilities. The Personnel Board shall hold a public hearing thereon at least ten days' notice of which shall be given by publication in the official journal of the Parish, and within thirty days after the submission of the plan by the Personnel Administrator it shall reject or adopt the same with or without modification. Changes in the classification Plan may thereafter by [sic] recommended from time to time by the Personnel Administrator and shall take effect when approved by the Personnel Board. After the adoption of the Classification Plan the class titles set forth therein shall be used to designate such positions in all official records, documents, vouchers and communications, and no person shall be appointed to or employed in a position in the Classified Service under any class title which has not been recommended by the Personnel Administrator and approved by the Personnel Board as appropriate to the duties to be performed. Employees affected by the allocation or reallocation of a position to a class or by any change in the Classification Plan shall be afforded an opportunity to be heard thereon by the Personnel Board after filing with the Personnel Administrator a request for such hearing. (Emphasis added)
Section 9.03 calls for the Personnel Administrator to prepare Pay Plans “covering all positions in the Classified Service”. Section 9.05 stipulates that officers of the Police and Fire Departments are not included in the Classified Service. Section 9.06 calls for the Personnel Administrator to prepare a Classification Plan “for all positions in the Classified Service” of which officers of the Police and Fire Departments are not members. Finally Section 9.07, by its own language, concerns Pay Plans for “each class of position in the Classification Plan”.
Because the PCO’s and the FCO’s are not included in the Classified Service and Classification Plan, Section 9.07’s requirement of pay parity does not apply to them. Therefore that provision does not require the City/Parish to provide equal pay to the EMSCO’s, PCO’s and FCO’s.

Equal pay under the Louisiana Constitution

La. Const. art. 10, §§ 1-15 establishes and governs the “State Civil Service” *889 and the “City Civil Service”. The City Civil Service includes employees of each city in the state having populations of over four hundred thousand people.[7] La. Const. art. 10, § 1. La. Const. art. 10, § 3 establishes the “State Civil Service Commission”. La. Const. art. 10, § 4 establishes a “City Civil Service Commission” for each city meeting the population requirement.
La. Const. art. 10, § 16 establishes a classified fire and police civil service system, which applies to all municipalities with a population in excess of 13,000 which operate regularly paid fire and municipal police departments. Moreover, firemen and policemen in municipalities having a population between 13,000 and 400,000 and operating regularly paid fire and municipal police departments are expressly barred from inclusion in a city civil service system. La. Const. art. 10, § 19. Various statutory provisions are also applicable to municipal fire and police civil service systems. La.R.S. 33:2471 et seq. sets forth the fire and police civil service law for municipalities with populations between 13,000 and 250,-000. These provisions apply to municipalities with the requisite populations which operate regularly paid fire and police departments. La.R.S. 33:2471. Additionally, these provisions create in the municipal government a classified service known as “the municipal fire and police civil service” system. La.R.S. 33:2475. This civil service system embraces the positions of employment, the officers, and the employees of municipal fire and police services. La.R.S. 33:2475. City of Baton Rouge v. Municipal Fire and Police Civil Service Board of Baton Rouge, 597 So.2d at 576-577.
The legislature has plenary power over minimum wage and law standards of firemen and policemen. La. Const. art. 6, § 14; Spillman v. City of Baton Rouge, 441 So.2d 1243, 1246 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1213 (La.1984). La.R.S. 33:1992A(1) mandates that “A fireman shall receive a minimum monthly salary of four hundred dollars per month.” La.R.S. 33:1992A(9) stipulates that “A fire alarm operator or dispatcher, or any other person doing this type of work for the fire department, shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.”
La. Const. art. 10, § 10 gives State and City Civil Service Commissions the power to adopt uniform pay plans. There is. no similar constitutional, statutory, or jurisprudential parity of pay requirement in the Municipal Fire and Police Civil Service System.[8] The trial court erred as a matter of law in holding that the Pay Plans for the PCO’s and EMSCO’s were deficient and illegal.
These assignments of error have merit.[9]
LEGAL INTEREST
In its answer to the appeal, the EM-SCO’s allege the trial court erred by awarding legal interest from the date of judicial demand rather than from the date each wage payment became due. Because we have held that the trial court erred in rendering judgment against the City/Parish, only the interest on the portion of the award against the Communications District is at issue.
The Communications District did not appeal. EMSCO answered the appeal of the City/Parish. We are unable to modify any judgment as between EMSCO and the Communications District. For this court to consider a modification, revision, or reversal of a judgment rendered against a party who has not appealed, a separate appeal *890 must be perfected. McDaniel v. DeJean, 556 So.2d 1336, 1340 (La.App. 3d Cir.1990) citing, Francois v. Ybarzabal, 483 So.2d 602, 605 (La.1986).
DECREE
For the foregoing reasons, the judgment in favor of the PCO’s and the EMSCO’s against the City/Parish is reversed. The PCO’s and EMSCO’s are cast for all costs of this appeal.
REVERSED AND RENDERED.

. Plaintiffs are presently, or were formerly, employed in the positions known as Police Communications Officer I, Police Communications Officer II, Police Communications Supervisor, EMS Communications Officer I, EMS Communications Officer II and EMS Communications Supervisor. They maintain that because they perform essentially the same duties as corresponding positions in the City/Parish Fire Department, they are entitled to equal pay.

. The Communications District was established pursuant to the legislative authority of La.R.S. 33:9101 et seq. La.R.S. 33:9101(A) provides as follows:
The governing authority of any parish may by ordinance create communications districts composed of any part of all the territory lying wholly within the parish. Such districts shall be political and legal subdivisions of the state, with power to sue and be sued in their corporate names and to incur debt and issue bonds. (Emphasis added)
The express purpose of allowing the creation of these communications districts is "to establish the number 911 as the primary emergency telephone number ... and to provide for the identification of all streets, roads, highways, and dwelling places in such districts.” La.R.S. 33:9102. The City/Parish attempted to place communications officers of the Police Depart *886 ment, Fire Department and Emergency Medical Services into the newly created Communications District. The Municipal Fire and Police Civil Service Board attempted to block the City/Parish's efforts to place the PCO’s and FCO's in the Communications District. This court, in City of Baton Rouge v. Municipal Fire and Police Civil Service Board of Baton Rouge, 597 So.2d 573, 577 (La.App. 1st Cir.), writ denied, 599 So.2d 306 (La.1992), stated as follows in holding that the PCO’s and the FCO’s could not be placed into the Communications District:
Pursuant to the clear constitutional and statutory provisions governing the municipal fire and police civil service systems, we find that the municipal positions which are responsible for the operations and maintenance of radio, fire or police alarm, or signal systems for either service are required to participate in the municipal fire and police civil service system and are expressly prohibited from participating in the city civil service system.

.The trial court held that the PCO's were entitled to an award for past due wages, including overtime, beginning three years prior to the date suit was filed (pursuant to La.Civ.Code art. 3494) and ending on the date of judgment.

. The trial court ordered the City/Parish to pay past due wages for the period beginning three years prior to the filing of suit and ending on January 12, 1991, the date the EMSCO’s became employees of the Communications District. The Communications District was ordered to pay that portion of the past due wages earned from January 12, 1991, through the date of judgment.

. The Communications District did not file an appeal. The judgment against it is now definitive.

. The EMSCO’s claim they did not have an adequate administrative remedy available. Because we have held the City/Parish failed make a timely objection to the failure to exhaust administrative remedies, we need not address this issue on appeal.

. Baton Rouge does not meet the population requirement and is thus not governed by this section.

. Plaintiffs cite Thoreson v. Department of State Civil Service, 433 So.2d 184 (La.App. 1st Cir.), writ denied, 440 So.2d 726 and 727 (La.1983), as authority for their "equal pay for equal work” argument. That case dealt with a Uniform Pay Plan established by the State Civil Service Commission pursuant to La. Const. art. 10 § 10. That constitutional provision does not apply to municipal fire and police civil service systems; therefore, Thoreson is not controlling in the instant case.

.Having found merit in these assignments of error, we will not address the City/Parish’s remaining assignments of error or the answers to the appeal.